Number 09-4740 Singh, the Attorney General of the United States, Mr. Fletchman and Ms. Singer. Your Honor, my name is Alexander Files. I just want to do an interview with Mr. Fletchman. The motion had previously been granted and we welcome him here. Fair enough. When you're done with this argument Mr. Fletchman, you'll want to come back many times. Good afternoon, Your Honor, and may it please the Court. My name is Frank Fletchman and I'm here on behalf of the petitioner, Mr. Papandherji Singh. Before I begin, I'd like to reserve two minutes for rebuttal. Granted. Your Honors, in this case, the heart of Mr. Singh's asylum claim was based on two alternative bases for belief. First was that Mr. Singh suffered past persecution when the Indian police arrested him. The problem that I have at the outset is that there were so many material inconsistencies in his testimony that how can we, applying a substantial evidence test, say that the IJ was necessarily wrong? He had two names at one point, three dates of birth, several areas of residence. His testimony regarding police searches occurring after he left came on, according to the IJ, as a quote, sudden claim, close quote. He provided information about demonstrations that purportedly were peaceful and someone else purportedly said that they were violent and he ultimately agreed to that. His father was tortured and nothing to back it up. There was conflicting evidence there and also as to whether he attends religious services. That's real tough for us. I mean... Your Honor, there are inconsistencies in the record here. There's no doubt about that. But these inconsistencies do not go to the heart of the claim. What the government has essentially argued is that 100 sticks makes a log. If your name doesn't go to the heart of the claim and your date of birth and your areas of residence and the key facts that relate to what you 20-some years later are saying affect why you have a reasonable fear of persecution should you return, that does go to the heart of it, doesn't it? Well, in order to go to the heart of the claim, Your Honor, they do have to enhance this claim of persecution. Now, take for example these two different names. These different names do not enhance this claim in any way. DHS never challenges identity. If you look at page 2 of the IG's opinion, they never charge him with fraud or misrepresentation. And the fact of the matter is the exact date of his birthday doesn't change the fact that he was persecuted. Well, he claims that he was persecuted. But the point is that there was an adverse credibility determination here. And at least three of the claims that he made were after he admitted that he had come here illegally and then subsequently submitted a claim that there was persecution of Sikhs in India. And it's tough to make that claim now in light of the country reports, another report that was put in the record, and also the fact that the prime minister is a Sikh himself. Well, Your Honor, with the country reports in particular, the IG never made a conclusion here that the government had rebutted a presumption that there were fundamental change of circumstances in the state of India. But if Mr. Singh can make out a case for past persecution, the government has to prove by ponderance of the evidence that there is a fundamental change in circumstances. But the IJ has said that he didn't make out a past claim. And essentially the test is that a reasonable person, no reasonable person would agree that the IJ is correct. And it's hard to say that no reasonable person would agree that the IJ could be correct here. Well, on his claim of past persecution, the IJ, her major concern was that he was not credible because she had concluded that Mr. Singh had participated in a violent demonstration and that therefore the Indian police may have had a legitimate reason to prosecute him. But simply because the Indian police may have had a legitimate reason to prosecute him would not give them a legitimate reason to persecute him. He wasn't just arrested, he was beaten and he had to be hospitalized. How do you know that? Because isn't that the point of an adverse credibility determination? These immigration judges aren't in the countries, obviously, so they listen to the testimony and it's important for them to determine whether the person is being candid or not. Here, the IJ said no. Your Honor, there's strong evidence in the record showing that there's a claim of past persecution and we have medical records to corroborate that. And there's no evidence in the record that directly contradicts this claim of past persecution. What's your best record evidence to demonstrate that the IJ erred in finding the testimony requiring our credit? Your Honor, the applicant here submitted two letters. There's one from the college audience and another from an attorney in India. Those are at pages 304 and 305 of the record and also at page 302. Both say that he was badly beaten and tortured here. He had also testified consistently throughout the merits hearing that he was beaten and tortured. This can be found at pages 152 to 164 of the record. We have medical records corroborating that testimony and those letters that he had submitted. So there's strong evidence here and there's nothing that directly contradicts that claim of past persecution. Now, the two pieces of evidence that the board and the government has focused on to question him on this were the hospital records. They include that they had questioned Mr. Singh about the date of his hospitalization and the extent of his injuries. But the facts involving these hospital records are so consistent and the potential discrepancies are so minor that no reasonable fact finder can rely on this evidence to question Mr. Singh's credibility. Now, the second issue, in addition to the past persecution, is whether Mr. Singh had a well-founded future persecution. And this does raise an issue that we were asked to address as amicus. That's whether the immigration judge misapplied this court's decision and she be asked for an act. Hi, Abulashvili. Abulashvili? Yes, hi. Oh, Shivya Ashraf. Oh, you're into Abulashvili. Okay. Okay, I'm sorry. Now, the reason Shivya Ashraf does not apply here is because Mr. Singh did include evidence in his documentation about these police searches. First of all, his I-589 would say that he was fearful of being detained. But more importantly, in his supporting documentation, namely the letter filed by the Punjab Human Rights Organization on his behalf, it specifically said that the police had inquired about Mr. Singh after he had left India. Now, taking these two pieces of evidence together... So those inquiries came when, somewhere between 1995 and 2002? Between 2003 and 95. He testified in 95, 98, 2000, and 2004. And there's no claim of such in the supplemental application? That's true. The exact dates of the police searches are not in the supplemental application. Well, no, there's nothing in the supplemental application about follow-up by the police following his departure, is there? That's correct. However, there was enough in the supporting documentation in his I-589 to at least flag the issue for the government and for the court, such that when he did testify about the exact dates, it wasn't a sudden claim. Under the Shibi-Ashcroft analysis, the testimony has to be sudden. Now, this letter from the Punjab Human Rights Organization was filed nine months before the merits hearing. There's no way nine months could be sudden in this case. Therefore, Shibi-Ashcroft was not... But he acknowledged that he knew about this follow-up himself prior to filing the supplemental application. Isn't the ALJ immigration judge entitled to say, if he, in fact, believes that there was follow-up, surely he would have put it in the supplemental? And since he didn't, I'm entitled to infer that this is a new, different claim. Well, Your Honor, two points on that. First, at one of the early calendar hearings, when Mr. Singh arrived, the IJA had asked him whether he wanted to supplement the application a little bit. Now, he did update it a little bit. He added his new address. He added a claim under the Convention Against Torture, and subsequent to that, he had filed the supporting documentation. Now, secondly, in this court's recent case in Abula Shafili v. Attorney General, the court has specifically said that an applicant does not have to list every claim of persecution in their I-589. And in this case, Mr. Singh had already listed his claim past persecution in the I-589. So therefore, it didn't have to be there in the first case in order for him to make out a claim of persecution. If there was evidence that he had participated in demonstrations that turned violent, why would not the police investigate? Well, Your Honor, if he was in demonstrations that were violent, the police in India would have a legitimate reason to prosecute him. But again, that does not give them a legitimate reason to persecute him. He wasn't just arrested. If he was arrested in the context of violent demonstrations, would that not explain the kind of injuries that he got, the blunt injury, blunt instrument injuries? Well, Your Honor, there's no evidence suggesting that the injuries that he suffered were a result of the demonstrations. The only evidence in the record supporting the claim that he was injured is his testimony that says he was injured when he was beaten by the police, and he was threatened by the police to stop his involvement with the Sikh separatist movement and with the Akali Daan Amritsar party. So the fact that he was beaten here is something that supports his claim of past persecution. What evidence is there in the record that supports his claim that the police searched for him in 1995, 1998, 2000, and 2003? Well, Your Honor, the best piece of evidence there is the letter, page 303 of the record, submitted by the Punjab Human Rights Organization that says that the police had inquired about him after he left India. But that's a far cry from persecution. I mean, inquiries almost don't come close to coming close to being persecution. Well, Your Honor, it would not support a claim of past persecution, but it would support his claim of a well-founded fear of future persecution, particularly because he has already submitted evidence of past persecution in this case. What evidence do you have that it's more likely than not that there is a continued risk to him when it appears, based on the country report and also the operational notes that were submitted, that the persecution of Sikhs has subsided? Well, Your Honor, on that point, we do believe there was a key omission here, both in the U.S. country reports and the guidance notes that were cited by the IJ. And that's that these country reports do not distinguish between Sikhs and Sikh separatists. They particularly don't distinguish between the Kalidaw party and a particular splinter group that Mr. Singh was a part of, the Kalidaw Amritsar. Now, in the court's case, Colby v. St. V. Gonzalez, this court has said that simply because an applicant is a Sikh doesn't mean that he can't be persecuted as a Sikh separatist. But what evidence do you have that in the last 10 years that the persecution, if it existed, of Sikhs, and at one point it did exist, what evidence do you have that it has not subsided? The evidence appears to be that it has subsided, based on the documents that I've noted. Well, Your Honor, we don't believe that's a burden that the applicant has to meet here. The government would have to meet the burden that there has been a fundamental change in circumstances for the past persecution. Well, he has to meet the burden of showing that there was past persecution, and the IJ didn't buy that. I mean, it's a big hill he's got to climb. That's correct, Your Honor, but on that claim of past persecution, we believe that she erroneously only looked at the legitimate reason to prosecute and not the legitimate reason to persecute. I see that time is running low. That's fine. We'll get you back on rebuttal. Thank you very much. Ms. Singer. Good afternoon, Your Honors. May it please the Court, my name is Jennifer Singer, and I represent the United States Attorney General. I'll respond to this matter. I think that based on the argument that we've just heard and my reading of the briefs, it seems like the most debatable issue here is whether the alleged inconsistencies or surprise additional claims go to the heart of the claim. Do you agree with the Ninth Circuit? The Ninth Circuit and your friend across the way say that means that only where the final position of the alien involving an inconsistency enhances his claim of persecution can there be any operation of non-credibility or inference of non-credibility. Do you agree with that statement? I do not agree with that statement, and I think he cites the Ninth Circuit case law in support of that position, and based upon my reading of this Circuit's decisions in regard to adverse credibility cases, pre-Real ID Act adverse credibility cases, the inconsistencies and discrepancy merely go to the heart of the claim, regardless of whether they can be deemed enhancements or whatnot. So that is not the case law of this Court, and the inconsistencies which the agency set it to in this case all do go to the heart of the claim. What is the definition in this Circuit of going to the heart of the claim? How does one tell a case where it goes to the heart of the claim from one where it doesn't? For example, here, Mr. Singh claims that he suffered past persecution and has a well-founded fear of persecution based upon his membership in Al-Qaeda and based upon his religion as a Sikh, and based upon this one demonstration that he participated in, whether it's one or two, is obviously one of the issues with the credibility determination, and based upon that, who he is as a person, his name, his date of birth, where he lived, where he claimed all these things occurred to him, the police searches and whatnot, and all of the inconsistencies which the immigration judge set it to all touch upon aspects of elements of a claim of persecution or a well-founded fear of future persecution that Mr. Singh would have to prove, and all the inconsistencies do touch upon aspects of those specific things that Mr. Singh would have to prove. What do you say to Mr. Singh's argument in that position that persecution is persecution whether it happens in Town A or Town B, or somebody is persecuted whether their first name begins with a D or begins with a P? Is that really going to the heart of the claim? In isolation, persecution is persecution. It's a legal definition. But in front of the immigration judge, Mr. Singh's claim in his initial asylum application and his supplemental asylum application, he claims that he lived in one location his entire life, and then in his testimony, he claims that he lived in a completely different location his entire life, and that all the aspects of his claim occurred in this second location. Why does that location make it more likely than it would otherwise be that there was persecution? In this case, it's not merely incidental, ancillary information. It's the crux of his claim because every aspect of persecution which he claims occurred in this specific geographic location, and by giving two entirely different locales, it's reasonable to question whether in fact he even set foot in this other location where he claims several things happened to him. And in that sense, it goes to the heart of the claim. Same with his identity information. He provided two different names, two different first names, and three different dates of birth, and he provided no reasonable explanation for it. He merely essentially blamed it on his previous attorney. And these inconsistencies also go to the heart of his claim because identity is, he's claiming to be this person with this name, with this date of birth, and he experienced these incidents, alleged incidents of past harm as this person with this date of birth. It gives another name and another date of birth, which would question, is Mr. Singh really the person who he's claiming to be, the same person who allegedly was a member of the Akeli Dal and allegedly participated in demonstrations? Is there any evidence on the record that the other person with the different name and the different birth dates was in fact a person who was renowned in the movement, or there was press that that person was persecuted? It just doesn't make any sense that someone would throw out the different name and date without purpose, right? And that's the precise issue here. There is no, it doesn't make any sense that Mr. Singh would provide two different first names and three different dates of birth. So then why is it background noise rather than a discrepancy that goes to the heart of the claim? It's not mere background noise because it's relatively simple information that one would be reasonably expected to provide correctly and accurately on the first time, not having to take three opportunities to provide... Yeah, people should know their birth date, I'm with you on that, but what I'm not understanding is why misstating one's birth date makes it more or less probable that he in fact was beaten and persecuted. It's just another... It just goes to his propensity for truthfulness generally, without respect to whether that goes to the heart of the claim, doesn't it? I would say, I mean, in whole, based upon all the inconsistencies in the record, this is just one other example of him not providing accurate or correct information. And identity is the crux of an asylum application. He is claiming that he is this one person with this one birth date who experienced harm, and then in a second application, he says he's a different person with a different first name, with a different birth date, also experiencing this alleged aspects of past crime. So the identity does go to the heart of the claim, that's your argument? It does. If you are, what your name is, where you were born, where you're from, all of that is the basic demographic information that is the beginning of the heart of the claim. Is that your position? It is. And here, the immigration judge, it led the immigration judge to question, is this person really as he claims to be? And is he really the person who he says he is this third time having experienced these incidents of past harm? And just leaves open, is he really telling the truth, and does it take him three opportunities to be able to provide alleged accurate information? It just underscores and sets up red flags for the immigration judge to really wonder, if he can't tell accurate information with the birth date, what else is maybe he providing misinformation on, and does he really need three opportunities to provide the court with accurate information? And who one purports himself to be goes to the heart of a silent claim, especially where he's claiming as this person he suffered past persecution and fears for future persecution. The problem that I have with this is that it does look as if the immigration judge took over the questioning from Ms. Roy on behalf of the Department of Homeland Security. I mean, she asked 56 questions. Some of them, if you take a look, for example, on appendix 214, which is page 138 of the transcript, it says, Mr. Singh, now why did you receive a letter, but yet not bring anyone from your guard here to testify today? Answer, I don't remember, I don't remember it. Question, oh, I'm so sorry, here's the letter. It's dated May 15, 2008. This hearing was May 19 of 2008. Since it's early, answer yes. Since it's only dated less than a week ago, do you remember it? I mean, you can just see the sarcasm dripping off the page, and that's just two of the questions. And we said with regard to this particular immigration judge, and I will let you lead, that taking over the questioning, answering at that point 87 questions, is unholy. What are you supposed to do? I would disagree with this court's characterization of that part of the immigration judge's decision or the testimony portion of it. I was watching the immigration judge, this court found that the same immigration judge took over questioning all the cross-examination question portion of the questioning when the government attorney was unprepared to cross-examine the alien in that case. Here, the immigration judge, who has a duty and is able to ask questions, and has a duty to develop the record, allowed for the full testimony and full hearing to take course before she started asking some questions. The petitioner's counsel did his direct, the government counsel did cross-examination, and then there was a small redirect, and at that point did the immigration judge begin to ask questions. And if you read the end portion of the testimony as a whole, I believe it shows that the immigration judge was merely asking questions to try to get Mr. Singh to explain some of the inconsistencies and explain perhaps why some evidence was not there that was reasonably expected to be there and just flush out the record. She has a duty to do that, does she not? She does. And it's within her right to ask questions and to get to the bottom of discrepancies that she may see is in the record. And looking at the record as a whole, I think she reserved that portion of her questioning towards the end of the entire hearing. Yeah, but there's a rule of reason at some point. I'm not saying she necessarily violated it here. But it does seem that when the judge takes over the questioning, it seems that this particular judge is taking over the questioning in various cases on behalf of the government rather than on behalf of any attempt to help the respondent. In this case, I think maybe she was also trying to help Mr. Singh because there were a lot of discrepancies and inconsistencies. And she was providing him with an opportunity to explain, perhaps explain away the reason for why he didn't have certain evidence or why he gave inconsistent dates or inconsistent testimony with regard to the events that he claimed happened to him. And in that sense, I don't think that she improperly took over the role of government counsel. But don't immigration judges, aren't they supposed to interject, yes, you fill in gaps, but not whole pages after page after page of questioning? Given the record as a whole and the whole testimony, it seems that it was a very lengthy hearing. It went on to three or four cassette tapes. And there were several questions and several incidents that needed explanation. And the 30 or 46 questions that were reserved? 56 here. 56 reserved by the immigration judge? I don't think it was disproportionate to the amount of discrepancies that needed to be clarified or issues of evidence that needed to be discussed. But why couldn't the government attorney do that? Was she just not prepared or what? According to government counsel's own statement in the record, he says he was prepared. There was an issue with an evidence packet not being there. And the government counsel did have the benefit of taking petitioner counsel's copy. Petitioner counsel had the opportunity to take the immigration judge's copy of the evidence during the direct and cross-examination portions. And the immigration judge reserved her final questioning for the end of the entire hearing. I should note that it didn't appear from looking at the transcript that the government attorney necessarily was unprepared. The government attorney seemed to know what the case was. And yet you have a judge taking over for this person, sort of like step aside, I'll handle this. I think that the immigration judge, and it was well within her right to ask questions and clarify issues in the record that she felt needed questioning and explanation. And she took that opportunity to ask Mr. Singh and give him the opportunity to clarify inconsistencies that she saw in the record. And I see my time is winding down. So, real briefly, whether or not this court is persuaded by all of the factors cited to by the immigration judge and the board, only one omission that goes to the hard of the claim is sufficient to uphold the agency's adverse credibility finding. That's right. The fact that Mr. Singh omitted the five researches that occurred after he left India in a supplemental application, as well as the fact that Mr. Singh omitted from a supplemental asylum application that his father was arrested, which all goes to the hard of the claim as it directly bears on the likelihood of future persecution and the reasonableness of his fear. And whether this court will find a hit, meaning one or two of the discrepancies were minor, it should not foreclose this court's ability to uphold the overall adverse credibility finding. And substantial evidence supports the reasons cited to by the agency. Thank you very much. If there are no further questions, thank you very much. Mr. Buxman. As you are approaching, Mr. Buxman, in the Abulashvili case that you cite, yes, there was a judge that went over the line, but when you read here, yes, there was some sarcasm. But what was wrong with the questioning and filling in the blanks and trying to make sure that this person could test whether there was a credibility problem here and indeed a credibility problem that the I.J. found Mr. Singh came up lacking? Well, Your Honor, the I.J. undoubtedly has a duty and authority to develop the record here. Is that all the I.J. really did? There are ways to do this that don't involve stepping into the role of an advocate. The I.J. could have prompted the government to ask a few more questions about these exhibits. She could have took another brief recess and gave you more time to review these documents. Instead, she stepped into his role. And it wasn't just a couple of questions. This was an extensive cross-examination. But it really did lead to some problems. I mean, for example, on the page where I quoted 214 of the appendix saying that the I.J. was a bit sarcastic, she then later asked him on the very same page, you have a letter from the priest at your temple and why wasn't it notarized? Did you ask your head priest to please go to a notary and sign this under oath? Answer, no, no, I didn't ask him to do it. He doesn't have time. He's a very busy man. That's not a good answer. I mean, that's an evasive answer. You could have brought the priest at the temple. So, I mean, there was a more complete development as a result of the questions asked here. And it's really hard to say that this particular I.J., although taking an active role, necessarily went over a line. Well, Your Honor, first of all, the letter from the temple wasn't central to this case. But also, this cross-examination could have developed a record and filled in some details. But it's our position that she's still across the line here. In what way? Because she's stepped into the role of the advocate here and she had an extensive cross-examination. Many of the... Stepping into the role of the advocate may not be good, but it doesn't mean that we grant a petition for review. It has to be beyond that. As I said before to Ms. Singer, there's a rule of reason here. And how was what the I.J. did here unreasonable? We think it was unreasonable because many of the pieces of evidence that she relies upon, in her opinion, is the incriminating documents in this case that came out during that cross-examination. They never came out earlier. Does... Enhancing... For the purposes of determining whether something goes to the heart of the case, does enhancing your own position include making it more difficult for the defense? Let's put it this way. Whether the persecution, claim persecution happened in Town A or Town B seems to be immaterial to whether persecution existed or not. On the other hand, if I were defending the case, I certainly would want to know where to look to determine whether this was a valid claim. Well, Your Honor, you're correct that it would be immaterial and it does have to enhance the claim of persecution, although the court of counsel has said that's only the law of the Ninth Circuit. If you look at page 9 of their brief, the case linked to the Attorney General, this court said that, courts have recognized that we look to whether it enhances the claim, the persecution claim, and the Third Circuit followed that statement of law. So that is the law of this circuit. Any conclusions? Do you concede that if the ambulance credibility determination was not in error, that you would lose the appeal? If there was an adverse credibility determination, that is valid here, that would preclude the possibility of him showing a claim of persecution, but we believe that there is not substantial evidence to support this adverse credibility determination. And therefore, the courts should grant the petition and remand for further proceedings. Thank you. Thank you to both counsel for well-presented arguments. Mr. Bletchley, is this your first time before a court of appeals? Yes, that's correct. Again, I hope you have many more. As they say in South Philly, you've done good. Thank you. Well done.